IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

MYSTIC THOMPSON, individually and
on behalf of all others similarly situated                                    PLAINTIFF


V.                                          NO. 4:07 CV 00017


BAYER CORPORATION and
BAYER HEALTHCARE LLC                                                          DEFENDANTS


**BAYER'S BRIEF IN SUPPORT OF ITS RESPONSE
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**


Submitted by:

Edwin L. Lowther, Jr. (81107)
Gary D. Marts, Jr. (2004116)
WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808

Attorneys for Defendants

758747-v1

## <u>TABLE OF CONTENTS</u>

Table of Authorities .............................................................................................iii

Introduction ....................................................................................................... 1

Statement of Facts.............................................................................................. 1

Argument ........................................................................................................... 3

I.  Plaintiff bears the burden of proving each of the requirements for class certification, and the Court must apply a rigorous analysis to determine whether plaintiff has met her burden............................................. 3

II.  Plaintiff's proposed class is not sufficiently identifiable because it is overly broad in including purchasers of WeightSmart who do not have cognizable claims........................................................................................ 5

III.  Plaintiff has not proven predominance and superiority as required by Rule 23(b)(3) because individual issues of law and fact predominate and the class action would be unmanageable................................................... 7

    A.  Common questions of law do not predominate in this matter because Arkansas law cannot be applied to all class members' claims and a variance in state laws precludes a finding that common issues predominate ..................................................................... 8

        1.  Arkansas law cannot apply to the claims of each member of a nationwide class. ..................................................... 8

        2.  Unjust enrichment laws vary greatly amongst different states, and individual issues of law therefore predominate over common issues in this matter........................................................................................... 15

    B.  Common issues of fact do not predominate because the reliance and damages determinations are not susceptible of common proof. ................................................................................................ 25

    C.  A class action is not a superior means of adjudicating the claims in this matter because the class is unmanageable... ........................... 31

IV.  Plaintiff has not proven the elements of commonality, typicality, and adequacy of representation as required by Rule 23(a). .................................. 32

    A.  Plaintiff cannot satisfy the commonality requirement because the claims against Bayer involve individual factual situations that require significantly different presentations of proof, even with regard to otherwise common issues. ........................................... 32

B.    Plaintiff cannot satisfy the typicality requirement because proof of a violation of law requires individualized inquiry.. ......................... 34

C.    Plaintiff has failed to prove adequacy of representation because her claim is atypical. ........................................................................ 37

Conclusion ................................................................................................ 38

Certificate of Service ................................................................................ 40

<u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996) ..................................................................... 34

*American Towers Owners Ass'n, Inc. v. CCI Mechanical, Inc.*, 930 P.2d 1182 (Utah 1996) ............................... 20

*Andrews v. American Tel. & Tel. Co.*, 95 F.3d 1014 (11th Cir. 1996) ........................................................... 31

*Ashley v. Eisele*, 247 Ark. 281, 445 S.W.2d 76 (1969) ........................ 22

*Baycare Health Systems, Inc. v. Medical Savings Ins. Co.*, 2008 WL 792061 (M.D.. Fla. March 25, 2008) ............................ 19

*Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455 (3rd Cir. 2006) ........................................................... 11

*Blades v. Monsanto Co.*, 400 F.3d 562 (8th Cir. 2005) ..................... 5, 8

*Bowden v. Grindle,* 651 A.2d 347 (Me. 1994) ................................... 19

*Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998) .......................................... 26

*Burns v. Dees*, 557 S.E.2d 32 (Ga. App. 2001) ................................. 22

*Canady v. Allstate Ins. Co.*, 1997 WL 33384270 (W.D. Mo. June 19, 1997) ................................................. 5, 6

*Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996) ...................................................... 15, 25, 31

*Clay v. American Tobacco Co.*, 188 F.R.D. 483 (S.D.Ill. 1999) ..................................................... 13, 16, 18, 35, 36

*Cole v. General Motors Corp.*, 484 F.3d 717 (5th Cir. 2007) .......... 14, 15

*Coleman v. Watt*, 40 F.3d 255 (8th Cir. 1994) .................................... 4

*Corley v. Entergy Corp.*, 220 F.R.D. 478 (E.D. Tex. 2004) ................. 22

*DJ Painting, Inc. v. Baraw Enterprises, Inc.*, 776 A.2d 413 (Vt. 2001) ...................................................... 21, 24

*Elizabeth M. v. Montenez*, 458 F.3d 779 (8th Cir.2006) ..................... 34

*Estate of Waters v. Hoadley*, 464 P.2d 85 (1970) ............................. 22

*Ferguson v. Kroger Co.*, 343 Ark. 627, 37 S.W.3d 590
(2001) ..................................................................................... 6

*Fireman's Annuity & Benefit Fund v. Mun. Employees',
Officers', and Officials' Annuity & Benefit Fund of
Chicago*, 579 N.E.2d 1003 (Ill. App. Ct 1993) ........................... 18

*Fitzpatrick v. Scalzi,* 72 Conn. App. 779 (2002). ............................. 17

*Forman v. Data Transfer, Inc.*, 164 F.R.D. 400 (E.D. Pa.
1995) ..................................................................................... 33

*Frelin v. Oakwood Homes Corp.*, 2002 WL 31863487 (Ark.
Cir. Nov. 25, 2002) ............................................................ 12, 16

*Fuller v. Hartford Life Ins. Co.*, 281 F.3d 704 (8th Cir.
2002) ..................................................................................... 12

*Gallinger v. N. Star Hosp. Mut. Assurance*, 64 F.3d 422
(8th Cir. 1995) ....................................................................... 18

*Gariety v. Grant Thornton LLP*, 368 F.3d 356 (4th Cir.
2004) ..................................................................................... 25

*General Motors Acceptance Corp. v. Dubose*, 834 So.2d 67
(Ala. 2002) ............................................................................. 21

*Georgine v. Amchem Prods., Inc.*, 83 F.3d 610 (3d Cir.
1996) ..................................................................................... 12

*Ghirardo v. Antonioli*, 14 Cal. 4th 39 (1996) .................................. 20

*Heating & Air Specialists, Inc. v. Jones*, 180 F.3d 923 (8th
Cir. 1999) .............................................................................. 11

*Hervey v. City of Little Rock*, 787 F.2d 1223 (8th Cir.
1986) ................................................................................. 5, 37

*In re Baycol Products Litigation,* 218 F.R.D. 197 (D.Minn.
2003) ................................................................................ 19, 34

*In re Graphics Processing Units Antitrust Litigation*, 527
F.Supp.2d 1011 (N.D. Cal. 2007) ........................................ 11, 23

*In re Jackson Nat. Life Ins. Co. Premium Litigation*, 183
   F.R.D. 217 (W.D. Mich. 1998) ................................................. 12

*In re Prempro Prods. Liab. Litig.*, 230 F.R.D. 555 (E.D.
   Ark. 2005). ......................... 8, 9, 10, 13, 15, 16, 23, 24, 27, 28, 31, 33

*In re Sears Retiree Group Life Ins. Litig.*, 198 F.R.D. 487
   (N.D. Ill. 2000) ...................................................................... 35

*In re Sears, Roebuck & Co. Tools Marketing & Sales
   Practices Litigation*, No. MDL–1703, slip op. (N.D. Ill.
   Dec.4, 2007) .......................................................................... 35

*In re Sears, Roebuck & Co. Tools Marketing and Sales
   Practices Litigation*, 2006 WL 3754823 (N.D. Ill. Dec.
   18, 2006) ..................................................................... 13, 14, 19

*In re: St. Jude Medical, Inc., Silzone Heart Valve
   Products Liability Litigation*, --- F.3d ----, 2008 WL
   942274 (8th Cir. Apr. 10, 2008) ............................................... 25

*In re: American Medical Systems, Inc.*, 75 F.3d 1069 (6th
   Cir. 1996) ............................................................................. 38

*Kelley v. Microsoft Corp.*, 2008 WL 509332 (W.D. Wash,
   Feb. 22, 2008) ............................................................ 9, 15, 16, 24

*Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206 (E.D. Pa. 2000)............. 10, 11

*McLaughlin v. Amer. Tobacco Co.*, --- F.3d ----, No. 06-
   4666, slip op. (2d Cir. Apr. 3, 2008) ........................... 26, 27, 29, 30

*Melchior v. New Line Productions, Inc.,* 106 Cal. App. 4th
   779 (2003) ............................................................................. 20

*Mueller v. CBS, Inc.*, 200 F.R.D. 227 (W.D. Pa. 2001)
   (citation omitted) ..................................................................... 5

*New Hotel Monteleone, Inc. v. First Nat. Bank of
   Commerce, Inc.*, 423 So.2d 1305 (La. App. 1982) ........................ 21

*Ninth Dist. Production Credit Ass'n v. Ed Duggan, Inc.*,
   821 P.2d 788 (Colo. 1991)........................................................ 21

*Oxford v. Williams Cos., Inc.*, 137 F.Supp.2d 756 (E.D.
   Tex. 2001) ............................................................................. 20

*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985).......... 9, 10, 11, 13

*Powers v. Lycoming Engines,* 245 F.R.D. 226 (E.D.Pa. 2007) ................................................................... 15

*Randolph V. Peterson, Inc. v. J.R. Simplot Co.,* 239 Mont. 1 (Mont. 1989)...................................................... 18

*Richmond Square Capital Corp. v. Ins. House,* 744 A.2d 401 (R.I. 1999) ..................................................... 20

*Salzman v. Bachrach,* 996 P.2d. 1262 (Colo. 2000) .......................... 17

*Seattle Prof'l Eng'g Employees Ass'n v. Boeing Co.,* 139 Wash. 2d 824 (2000)............................................... 20

*Simpson v. Liberty Mut. Ins. Co.,* 28 F.3d 763 (8th Cir. 1994) ...................................................................... 12

*Singer v. City of Waco, Tex.,* 324 F.3d 813 (5th Cir. 2003) ................. 22

*Spence v. Glock, Ges.m.b.H.,* 227 F.3d 308 (5th Cir. 2000)............ 12, 14

*Sprague v. General Motors Corp.,* 133 F.3d 388 (6th Cir. 1998) ...................................................................... 34

*Sundance Homes, Inc. v. County of DuPage,* 746 N.E.2d 254 (Ill. 2001)...................................................... 22

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.,* 209 F.R.D. 159 (C.D. Cal. 2002) ......................4

*VRG Corp. v. GKN Realty Corp.,* 641 A.2d 519 (N.J. 1994)............... 18

*Zinser v. Accufix Research Institute, Inc.,* 253 F.3d 1180 (9th Cir. 2001)........................................................8

 **Books and Treatises**

*Moore's Federal Practice* (Matthew Bender 3d ed.)...................... 32, 33

## INTRODUCTION

Plaintiff requests that this Court do something that the Eighth Circuit Court of Appeals recently held to be improper—certify a class actions based on alleged fraudulent misrepresentations on which a plaintiff alleges an entire class relied.  In this case, plaintiff alleges that Bayer made false representations about the properties of its One-A-Day WeightSmart multivitamin product and that somehow every single person who purchased the product was uniformly induced to do so by the alleged misrepresentations.  An examination of the law and facts necessary to prove such a claim, however, reveals that the inquiries required for plaintiff's claims are far too individualized for class action treatment.  Accordingly, common issues do not predominate, which also defeats the superiority argument under Fed. R. Civ. P. 23(b)(3).  In addition, plaintiff has not specified a sufficiently identifiable class, and she cannot prove commonality, typicality, and adequacy of representation under Rule 23(a).  For all of these reasons, this Court should therefore deny plaintiff's motion for class certification.

## STATEMENT OF FACTS

Plaintiff Mystic Thompson has filed suit against Bayer Corporation and Bayer Healthcare, LLC (collectively, "Bayer") alleging that Bayer "falsely and deceptively promoted and marketed" its One-A-Day WeightSmart multivitamin by claiming that the product would cause consumers "to rapidly lose substantial weight."  (Second Amended Complaint at ¶ 10).  Plaintiff further alleges that Bayer

represented that One-A-Day WeightSmart would cause rapid, substantial weight loss with no need to exercise or eat sensibly.  (Second Amended Complaint at ¶ 12).

An examination of the advertisements in question reveals that they make no such representations.  For example, plaintiff attached several advertisements to her motion for class certification as Exhibit B, and none of those advertisements represents that One-A-Day WeightSmart would cause a user "to rapidly lose substantial weight."  In fact, those advertisements typically told viewers that One-A-Day WeightSmart had an ingredient that enhanced metabolism to assist users while they "eat right [and] exercise" or "exercise more [and] eat smarter."  (*See* Exhibit B, FTC Order, and attached exhibits).

Plaintiff characterizes the One-A-Day WeightSmart advertising efforts undertaken by Bayer as "uniform and misleading statements" (Plaintiff's Brief at 5), but the evidence that plaintiff attached to her motion demonstrates that Bayer engaged in a multifaceted advertising campaign that made a host of different statements through various media, including television, print, and the internet. Moreover, plaintiff herself indicated at deposition that she saw only two commercials prior to purchasing One-A-Day WeightSmart (Exhibit 1 to the response, Relevant Excerpts from the Deposition of Mystic Thompson, at 35–36). There has been no showing (nor even any argument) by plaintiff that potential class members were exposed to the same representations, much less, in exactly the same way.

Indeed, consumer purchase decisions are complex, relying on more varied information than merely commercials.  (Exhibit 2 to the response, Affidavit of Richard Semenik, at ¶ 9).  Consumers make purchase decisions "in a complex and dynamic way," and their decisions are affected "by potentially dozens of factors including but not limited to:  age, marital status, income, social class, lifestyle, observation of others, culture,  friends, family, prior experiences, hedonic/aesthetic motivations, economic conditions, environmental factors, situational factors, values and attitudes, personality, media exposure and marketer controlled stimuli (e.g., product features, price, packaging, advertising,  promotion, personal selling, etc.)." (Exhibit 2 at ¶ 9).  The importance and impact of those factors vary based on the situation.  Accordingly, an advertising representation is merely one small consideration in a consumer's decision-making process and by no means determinative of the ultimate decision on whether to purchase the product.

## ARGUMENT

### I.   Plaintiff bears the burden of proving each of the requirements for class certification, and the Court must apply a rigorous analysis to determine whether plaintiff has met her burden.

To establish that certification is proper, plaintiff must first establish that her case meets all of the requirements of Rule 23(a) of the Federal Rules of Civil Procedure:

(1)   the class is so numerous that joinder of all members is impracticable;

(2)   there are questions of law or fact common to the class;

(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)     the representative parties will fairly and adequately protect the interests of the class.

Courts have also applied an implicit requirement that an identifiable class must exist. *See, e.g.*, *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 163 (C.D. Cal. 2002)

In addition to the above requirements, a plaintiff must also prove that the proposed class action fits within one or more of the three categories provided in Rule 23(b):  (1) there is a risk of prejudice from separate actions in that they might establish incompatible standards of conduct or judgments that would adversely affect the rights of other members of the class; (2) the party opposing the class has acted (or refused to act) in a manner applicable to the class generally, thereby making injunctive or declaratory relief appropriate with respect to the class as a whole; or (3) the questions of law or fact common to the class predominate over questions affecting individual members and, on balance, class certification is superior to other methods available for adjudicating the controversy.  Fed.R.Civ.P. 23(b)(1)–(3).[1]

Plaintiff bears the burden of proving *each* of the Rule 23 requirements. *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994) .  In determining whether plaintiff has met this burden, the Court must undertake a "rigorous analysis" to determine whether she has met her burden and certification is appropriate. *Hervey*

---

[1] Plaintiff seeks certification only under Rule 23(b)(3).

*v. City of Little Rock*, 787 F.2d 1223, 1227 (8th Cir. 1986).   Further, the Eighth

Circuit has explained that a court undertaking this rigorous analysis "must conduct

a limited preliminary inquiry, looking behind the pleadings." *Blades v. Monsanto*

*Co.*, 400 F.3d 562, 566 (8th Cir. 2005) .  The purpose of this inquiry is to determine

whether "common evidence could suffice to make out a prima facie case for the

class." *Id.*  This inquiry "may require the court to resolve disputes going to the

factual setting of the case, and such disputes may overlap the merits of the case."

*Id.* at 567.   Should the analysis find a failure to meet even one of the Rule 23

requirements, that failure precludes class certification.

## II. Plaintiff's proposed class is not sufficiently identifiable because it is overly broad in including purchasers of One-A-Day WeightSmart who do not have cognizable claims.

Before a class may be certified pursuant to Rule 23, "the court must

determine as a threshold issue if the class is 'sufficiently identifiable without being

overly broad.'" *Mueller v. CBS, Inc.*, 200 F.R.D. 227, 233 (W.D. Pa. 2001) (citation

omitted).  A class definition that includes persons without cognizable claims is

overly broad. *See Canady v. Allstate Ins. Co.*, 1997 WL 33384270, at *2–3 (W.D.

Mo. June 19, 1997), *aff'd*, 162 F.3d 1163 (8th Cir. 1998) (table decision, text

available at 1998 WL 403200) (affirming "for the reasons stated in the district

court's thorough opinion").

In *Canaday*, the plaintiffs defined a class of claimants for violations of the

Civil Rights and Fair Housing Acts in terms of individuals living in "minority

neighborhoods," which were identified via specific zip codes.  *Id.*   This broad

definition failed to satisfy the plaintiffs' burden of proving that every person living within a predominantly minority zip code had suffered an injury in fact. *Id.* at 3. The court thus rejected the "plaintiffs' blanket contention that every member of the proposed broad class definition ha[d] allegedly suffered harm as a result of the defendants' wrongdoing" and found the definition overbroad. *Id.*

An Arkansas case makes a similar point in a factual setting analogous to that in the present case. In *Ferguson v. Kroger Co.*, 343 Ark. 627, 634, 37 S.W.3d 590 (2001) , the Supreme Court held that a class could not be certified in a case alleging that Kroger had misled and damaged shoppers by means of a fraudulent double-coupon promotion. Considering that the advertisements appeared in only seventeen states over a three-year period using three mediums (media?) of promotion (newspapers, mail, and door hangers) and that identifying class members would require extensive factual inquiry into an individual's motivations and actions, the Court ruled that defining the class would prove to be an "all but insurmountable" challenge. *Id.*

In the present case, plaintiff's proposed class is overbroad because it includes persons who might not have cognizable claims. Plaintiff defines the class as consisting of "All persons who purchased One-A-Day WeightSmart from December 1, 2003 up through the date Defendants stopped all marketing claiming the pill enhanced metabolism and aided weight loss." (Second Amended Class Action Complaint at ¶ 24 (emphasis in the original)). Plaintiff's claims are premised on the allegation that Bayer advertised One-A-Day WeightSmart falsely and deceptively

and thus induced the purchase of a product that the buyers would not have purchased otherwise.  However, consumers purchase a product for a variety of reasons beyond merely seeing an advertisement (*See* Exhibit 2 at ¶¶ 9–10).  Thus, the proposed class of all purchasers of One-A-Day WeightSmart necessarily includes consumers who were not induced to purchase the product based upon the advertisements in question.  The class also includes people who may not have seen, let alone relied upon, any of Bayer's advertising with regard to One-A-Day WeightSmart.  Undoubtedly, such purchasers would not have any injuries in fact, despite being part of the defined class.  Moreover, as in *Ferguson*, an individual inquiry will be required to determine what each plaintiff actually saw or heard, making class certification unworkable.

Because plaintiff's class definition specifies a class that is overly broad, the Court should deny the motion for class certification for failure to specify a sufficiently identifiable class.

## III.   Plaintiff has not proven predominance and superiority as required by Rule 23(b)(3) because individual issues of law and fact predominate and the class action would be unmanageable.

Plaintiff asserts that her putative class action satisfies Rule 23(b)(3)'s requirement that common questions of law and fact predominate and that class treatment would be superior to other forms of adjudication.  Plaintiff's claim fails on both requirements.  First, individual questions of law and fact predominate over any common questions.  Second, plaintiff has proposed a class action that requires

the application of fifty separate state laws to the claims, leaving the case
unmanageable.

>    **A.    Common questions of law do not predominate in this matter
>    because Arkansas law cannot be applied to all class members'
>    claims and variance in state laws precludes a finding that
>    common issues predominate.**

Rule 23(b)(3) parallels subdivision (a)(2) to some extent, "in that both require
that common questions exist, [but] subdivision (b)(3) contains the more stringent
requirement that common issues 'predominate' over individual issues." *In re
Prempro Prods. Liab. Litig.*, 230 F.R.D. 555, 566 (E.D. Ark. 2005) .  Satisfying the
predominance standard requires that plaintiffs "show that [their claims] can be
proven on a systematic, class-wide basis." *Blades v. Monsanto Co.*, 400 F.3d 562,
569 (8th Cir.2005).

>    **1.    Arkansas law cannot apply to the claims of each member of a
>    nationwide class.**

In a diversity class action where the plaintiff is pursuing common law claims
and requests the certification of a class that involves multi-state parties, "courts
must address choice-of-law issues," which are "constitutionally mandated because a
party has a right to have her claims governed by the state law applicable to her
particular case." *In re Prempro*, 230 F.R.D. at 561-62 (E.D. Ark. 2005) (refusing to
apply Arkansas unjust enrichment law to a multi-state class); *see also Zinser v.
Accufix Research Institute, Inc.*, 253 F.3d 1180, 1187-88 (9th Cir. 2001) (explaining
that because the court "must look to the forum state's choice-of-law rules to
determine the controlling substantive law," California negligence law could not be

applied to all class members).  This analysis is a "threshold matter" in the
certification matter because the choice-of-law issue "pervades every element of
FRCP 23."  *In re Prempro*, 230 F.R.D. at 561–62.

In the present case, even though only a small percentage of the likely
putative class members are citizens of Arkansas, plaintiff contends that Arkansas
law should apply to her putative nationwide class action.  (Plaintiff's Brief at 20–
21).  Determining whether Arkansas law is applicable to the claims of all putative
class members requires the Court to analyze: (1) whether the application of
Arkansas law is constitutional, and, if so, (2) whether its application is appropriate
under Arkansas' choice-of-law rules.  *Kelley v. Microsoft Corp.*, 2008 WL 509332 at
*3 (W.D. Wash. Feb. 22, 2008) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S.
797, 105 S.Ct. 2965 (1985)).  For the reasons set forth below, the Court cannot apply
Arkansas law uniformly to all members of the purported class and must apply each
state's unjust enrichment law to the class members residing in that state.

> ### a.   Applying Arkansas law to the claims of the entire putative class would be unconstitutional.

Under the U.S. Constitution, a forum state's substantive law may apply in a
class action only if the forum state has "a significant contact or significant
aggregation of contacts to the claims asserted by each member of the plaintiff
class."  *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 821-22 (1985).  Ensuring
that the choice of law is not arbitrary or unfair requires "sufficient contacts
supporting the state's interest in applying its law."  *Id.*  Where plaintiffs have
relatively few contacts with the forum state, a court may determine that there are

not sufficient contacts with the forum state to warrant application of that state's law. *See id.* at 822 (finding application of Kansas law to a class action unconstitutional even though the defendant conducted business in Kansas where 97% of plaintiffs had no ties to Kansas and 99% of the gas leases at issue were unconnected to Kansas). Thus, in the present matter, Arkansas must have a "'significant contact or significant aggregation of contacts to the claims asserted by *each* member of the plaintiff class, contacts 'creating state interests,'" for the application of Arkansas law to be constitutional. *Id.* at 821 (emphasis added).

As explained in *Lyon v. Caterpillar, Inc.*, "[p]utative class members have a due process right to have their claims governed by state law applicable to their dispute." 194 F.R.D. 206, 213 (E.D. Pa. 2000); *In re Prempro*, 230 F.R.D. at 562. In *Lyon*, the court decertified a multi-state class and held that Pennsylvania law could not be applied uniformly to all class members because the only contact the parties have with Pennsylvania is some of the putative class members' residence in Pennsylvania. Applying the Pennsylvania consumer fraud act to all the putative class members' claims would be a violation of the due process rights of those plaintiffs who do not live in Pennsylvania and/or who did not purchase their boats in Pennsylvania." *Id.*

As in *Lyon,* the majority of the putative class members in this case have no contacts with Arkansas. Most members of the purported nationwide class are citizens of different states, were exposed to Bayer's advertising for One-A-Day WeightSmart in other states, and purchased One-A-Day WeightSmart in a state

other than Arkansas.  Consequently, the vast majority of the class members do not have *any* contacts with Arkansas, let alone "a significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class" such as the Constitution requires.  *See Phillips Petroleum Co.,* 472 U.S. at 821-22. In short, Arkansas does not have a "state interest" in claims unrelated to the state, and application of Arkansas laws to the contemplated nationwide class would violate the Constitution.  *See id.*; *see also Lyon v. Caterpillar, Inc.*, 194 F.R.D. at 213; *In re Graphics Processing Units Antitrust Litigation*, 527 F.Supp.2d 1011, 1028 (N.D. Cal. 2007)

> **b.   Applying Arkansas law to the claims of putative class members with no relationship to Arkansas does not satisfy Arkansas's significant contacts test for choice-of-law determinations.**

An analysis of Arkansas's choice of law rules is not necessary because, as explained above, the uniform application of Arkansas law to the nationwide class is unconstitutional.  However, even if the application of Arkansas law did not run afoul of the Constitution, the Court cannot apply Arkansas law uniformly to the putative class because Arkansas's choice-of-law test requires "significant contacts" with the forum state.

If the court finds that application of Arkansas law does not violate the Constitution, it must apply the choice-of-law rules of the forum state.  *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 463 (3rd Cir. 2006);  *Heating & Air Specialists, Inc. v. Jones*, 180 F.3d 923, 928 (8th Cir. 1999) (stating that federal district courts apply the choice-of-law provisions in the state in which they sit in

diversity).  Arkansas has adopted the "most significant relationship" test as its choice-of-law rule.  *Fuller v. Hartford Life Ins. Co.*, 281 F.3d 704, 707 (8th Cir. 2002).   In determining which state has the most significant relationship, an Arkansas court will weigh the following considerations: "(1) Predictability of results; (2) Maintenance of interstate and international order; (3) Simplification of the judicial task; (4) Advancement of the forum's governmental interests; (5) Application of the better rule of law." *Simpson v. Liberty Mut. Ins. Co.*, 28 F.3d 763, 764 (8th Cir. 1994).

To determine whether Arkansas law should apply, the court must consider Arkansas's choice of law rules and apply an "individualized choice of law analysis to each plaintiff's claims,"—a task that, in and of itself, would render the case unmanageable and ill-suited for class treatment.  *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996) (emphasis added), *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231 (1997); *Frelin v. Oakwood Homes Corp.*, 2002 WL 31863487 at *12 (Ark. Cir. Nov. 25, 2002); *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 313 (5th Cir. 2000)) (stating that the "choice of law determination is a function of the individual defendant, plaintiff, and the circumstances of the claim").  This analysis "is not to be altered in a nationwide class simply because it may otherwise result in procedural and management difficulties." *Frelin*, 2002 WL 31863487 at *12; *In re Jackson Nat. Life Ins. Co. Premium Litigation*, 183 F.R.D. 217, 223 (W.D. Mich. 1998).  Accordingly, a court "may not take a transaction with little or no relationship to the forum and apply the

law of the forum in order to satisfy the procedural requirement" of Rule 23.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821, 105 S.Ct. 2965 (1985).

As mentioned above, plaintiff has no proof that Arkansas has contacts with the majority of the class members.  Thus, even if the court were to undertake the daunting, if not impossible, task of applying Arkansas's "significant contacts" choice of law test to those purported class members in different states, it would find that the laws of the states in which the class members reside should govern because Arkansas has no contacts with or interest in class members residing outside of the state.

Plaintiff suggests that it is not necessary to engage in a choice-of-law analysis and that Arkansas law should apply simply because the unjust enrichment laws of the fifty states are purportedly "substantially identical."  The courts, including the Honorable William R. Wilson in this district,[2] have held otherwise.  *See In re Prempro Products Liability Litigation*, 230 F.R.D. 555, 563 (E.D. Ark. 2005); *Clay v. American Tobacco Co.*, 188 F.R.D. 483, 501 (S.D.Ill. 1999); *In re Sears, Roebuck & Co. Tools Marketing and Sales Practices Litigation*, 2006 WL 3754823 at *1 (N.D. Ill. Dec. 18, 2006)  In *Prempro*, Judge Wilson held that unjust enrichment claims have varying interpretations across the fifty states and cannot be grouped in such a way as to be conducive to class treatment.  *In re Prempro*, 230 F.R.D. at 563.

---

[2] In the *Prempro* case, Judge Wilson colorfully expressed his preference for class actions as "the Colt pistol of the little folks," but not even that preference convinced him to certify a case similar to the present one in which the plaintiff "failed to present a way to manage the laws of the various states in an unitary trial; and individual issues of fact *and* law overwhelmed any common issues."  *In re Prempro*, 230 F.R.D. at 574 (emphasis in the original).  A class action-friendly judge's refusal to certify a consumer fraud class action indicates the extent to which certification is improper in these cases.

Also, it should be noted that Exhibit G to Plaintiff's Motion for Class Certification falls drastically short of the "extensive analysis" of state law variations necessary to allow the court to determine whether these differences in law pose "insuperable obstacles" to class certification. *Spence v. Glock*, 227 F.3d at 313; *Cole v. General Motors Corp.*, 484 F.3d 717, 725-26 (5th Cir. 2007) (stating that the "party seeking certification of a nationwide class must therefore provide an 'extensive analysis' of state law variations to reveal whether these pose 'insuperable obstacles'"). Thus, plaintiff, as the party seeking certification of a nationwide class, has not satisfied her burden of showing that state law variations do not affect predominance—nor can she, for the reasons set forth below. In fact, at least one court has explicitly stated that the type of state-by-state analysis performed by plaintiff here is insufficient to establish that there is no conflict of law. *See In re Sears, Roebuck & Co. Tools Marketing and Sales Practices Litigation*, 2006 WL 3754823 at *1, n. 3 (N.D. Ill. Dec. 18, 2006) . In *Sears*, the court stated that the plaintiff's exhibit providing a list of one-sentence statements regarding the elements of unjust enrichment "drawn from a single case from each state" did not establish that "unjust enrichment laws of the fifty states are 'substantially identical'" because "Plaintiffs do not engage in any sort of analysis of the nuances of unjust enrichment law or what must actually be proved in each state." *Id.*

In short, plaintiff has failed to satisfy her burden of providing a comprehensive analysis of the fifty states' laws to show that class certification is proper under Rule 23. Class certification should therefore be denied for this reason

alone.  *Cole*, 484 F.3d at 724 (holding that "[f]ailure to engage in an analysis of state law variations is grounds for decertification").  Additionally, as demonstrated below, any deeper analysis of the differences and nuances among the various states' laws shows that variations in state law would make the case unmanageable or cause individual issues to overcome common ones, thus rendering class certification improper.

> **2.    Unjust enrichment laws vary greatly amongst different states, and individual issues of law therefore predominate over common issues in this matter.**

If this Court applies the choice-of-law analysis and determines that multiple states' varying laws apply, "the variations may impact whether common issues of law and fact predominate."  *Cole*, 484 F.3d at 724.  Indeed, as a matter of general principle, the predominance, typicality, adequacy, and superiority requirements of Rule 23(b)(3) will not be satisfied if the putative class claims must be decided on the basis of different laws of multiple states. *Kelley v. Microsoft Corp.*, 2008 WL 509332 at *3 (W.D. Wash, Feb. 22, 2008); *Powers v. Lycoming Engines*, 245 F.R.D. 226, 229 (E.D.Pa. 2007); *Castano v. American Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996).  In the *Prempro* case, Judge Wilson premised his ruling that individual issues predominated over common issues on his finding that "state-by-state variations in the law trump the common issues of law or fact" and thus "preclude a finding that common issues predominate."  *In re Prempro*, 230 F.R.D. at 566.

This case presents a nearly identical situation to *Prempro*.  Because plaintiff seeks certification of a nationwide class and Arkansas law cannot properly be

applied to those class members with no Arkansas contacts, the Court must consider

the laws of all concerned states, which in the case of this nationwide purported class

includes all fifty states. *Kelley v. Microsoft Corp.*, No. C07-475MJP, slip copy, 2008

WL 509332 at *4 (W.D. Wash. Feb. 22, 2008); *Frelin*, 2002 WL 31863487 at *12 "As

a general matter, the elements of unjust enrichment 'vary from state to state and

require individualized proof of causation.'" *Kelley*, 2008 WL 509332 at *4.

Considering the issue in *Prempro*, Judge Wilson held that "a review of the unjust

enrichment . . . claims reveals that these laws cannot reasonably be grouped in a

comprehensive manner that does not seriously impinge on the integrity of the law of

each state." *In re Prempro*, 230 F.R.D. at 563.  Similarly, in *Clay v. American

Tobacco Co.*, the court explained that

> [V]ariances exist in state common laws of unjust enrichment.  The
> actual definition of 'unjust enrichment' varies from state to state.
> Some states do not specify the misconduct necessary to proceed, while
> others require that the misconduct include dishonesty or fraud.  Other
> states only allow a claim of unjust enrichment when no adequate legal
> remedy exists.  Many states, but not all, permit an equitable defense of
> unclean hands.  Those states that permit a defense of unclean hands
> vary significantly in the requirements necessary to establish the
> defense."

188 F.R.D. 483, 501 (S.D. Ill. 1999).

Plaintiff fails to address adequately these variations in state law.  In fact, in

Exhibit G, plaintiff essentially acknowledges that she does not adequately group the

states by the elements of unjust enrichment.  For instance, she provides a note

stating that she did not separate out "[a] few states [that] also mention that the

benefit must be at the expense (or impoverishment) of the plaintiff" because

supposedly, "that requirement may be implied in the first element that plaintiff has conferred a benefit on the defendant."  Contrary to plaintiff's assertions, however, the mere fact that a purchaser spent money on One-A-Day WeightSmart, thereby conferring a benefit on Bayer, does not establish that the benefit was at the expense or impoverishment of the purchaser.  *See Salzman v. Bachrach,* 996 P.2d. 1262, 1266 (Colo. 2000) (suggesting that for the "expense" requirement to be satisfied, the plaintiff must have "suffer[ed] in some way") .  A plaintiff who purchased One-A-Day WeightSmart for its multivitamin support, and not as a weight loss product (as plaintiff Thompson claims she did), was in no way impoverished and did not suffer any injury by her purchase.  Similarly, in the second grouping of states categorized in Plaintiff's Exhibit G as "Restitution and No Adequate Remedy at Law," the "alternate [sic] wording of [the] same elements" differs in substance from the first set of elements.[3]

Even assuming that the citations listed in plaintiff's "state by state analysis" of unjust enrichment provide authority for the basic elements of unjust enrichment in the respective states (which they do not),[4] plaintiff fails to examine any of the

---

[3] The "alternate [sic] wording" of the first set of elements requires that there be a "[a] connection between the enrichment and the impoverishment" and "[t]he absence of justification for the enrichment and the impoverishment."  These additional elements are not necessarily encompassed in the first wording of the elements.

[4] For example, the Texas citation in plaintiff's Exhibit G is to a Missouri case and does not address unjust enrichment.  823 S.W.2d 39 (Tex. 1992).  The New Jersey citation does not address unjust enrichment as a cause of action; rather, it refers to it as a remedy.  677 A.2d 747 (N.J. Supr. 1996).  The Connecticut citation lists elements for unjust enrichment that are different from those stated in Exhibit G.  In Connecticut, the plaintiff must prove: "(1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment."  *Fitzpatrick v. Scalzi,* 72 Conn. App. 779, 787 (2002).

other differences in state law that would make class treatment difficult, if not impossible.  Provided below are just a few examples of the variations in state unjust enrichment law ignored by plaintiff that would cause individual issues to predominate and render the class action unmanageable.

> **a.    The elements of unjust enrichment vary from state to state.**

One way in which unjust enrichment "varies from state to state" is that some states do not specify the misconduct necessary to proceed, while others require that the misconduct involve dishonesty or fraud.  *Clay v. American Tobacco Co.*, 188 F.R.D. at 509.  For example, Montana requires that a plaintiff "show some element of misconduct or fault on the part of the defendant or that the defendant somehow took advantage of the plaintiff."  *Randolph V. Peterson, Inc. v. J.R. Simplot Co.,* 239 Mont. 1, 8 (Mont. 1989).  Minnesota, on the other hand, has held an enrichment to be unjust where it would be illegal, unlawful, or where the circumstances were "morally wrong."  *Gallinger v. N. Star Hosp. Mut. Assurance*, 64 F.3d 422, 426 (8th Cir. 1995) (applying Minnesota law) (citations omitted). New Jersey requires plaintiffs to prove that they "expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that failure of remuneration enriched defendant beyond its contractual rights."  *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994).  On the other end of the spectrum, Illinois has *no* requirement of "fault or illegality on the part of the defendant" at all.  *Fireman's Annuity & Benefit Fund v. Mun. Employees', Officers', and Officials' Annuity & Benefit Fund of Chicago*, 579 N.E.2d 1003, 1007 (Ill. App. Ct 1993).

These substantial differences in just a handful of states are merely illustrative of the many and varied differences among the laws of the fifty states that would be revealed by a more exhaustive examination (which plaintiff, despite being required to do so failed to do.)  Even the brief survey undertaken here, though, amply undermines plaintiff's assertion that the Court faces "only a few nuanced variations" in making its determination here.  Entirely different elements, particularly as they related to the misconduct underlying a claim of unjust enrichment, are substantive and much more substantial that mere "nuance."

      b.    **The status of unjust enrichment as a legal or equitable claim or even as a separate claim varies from state to state.**

Additionally, "some states consider unjust enrichment a remedy at law, while others consider it an equitable claim." *In re Baycol Products Litigation,* 218 F.R.D. 197, 214 (D.Minn. 2003).  For instance, in Illinois, unjust enrichment is a legal claim. *In re Sears, Roebuck & Co. Tools Marketing and Sales Practices Litigation*, 2006 WL 3754823 at *3.  Florida, however, considers the claim to be an equitable cause of action. *Baycare Health Systems, Inc. v. Medical Savings Ins. Co.,* 2008 WL 792061 at *8 (M.D.. Fla. March 25, 2008) (stating that "[a] claim for unjust enrichment is an equitable claim") .  Accordingly, in at least one state, Maine, a jury trial for unjust enrichment claims is not available. *Bowden v. Grindle,* 651 A.2d 347, 351 (Me. 1994) (holding that "[u]njust enrichment is an equitable action and, thus, not one triable of right by jury").

Various states also differ as to whether unjust enrichment can even survive on its own as a separate claim, as opposed to a remedy that relies on another claim. For instance, in Washington and Utah, a plaintiff cannot recover for unjust enrichment if she has an adequate remedy at law, whereas Rhode Island allows overlapping unjust enrichment claims. *Compare Seattle Prof'l Eng'g Employees Ass'n v. Boeing Co.,* 139 Wash. 2d 824, 838-39 (2000) and *American Towers Owners Ass'n, Inc. v. CCI Mechanical, Inc.*, 930 P.2d 1182, 1193 (Utah 1996) *with Richmond Square Capital Corp. v. Ins. House,* 744 A.2d 401, 402 (R.I. 1999). In California, the courts are split on whether unjust enrichment is a cause of action. *Compare Melchior v. New Line Productions, Inc.,* 106 Cal. App. 4th 779, 793 (2003) (stating that the "phrase 'unjust enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so") *with Ghirardo v. Antonioli*, 14 Cal. 4th 39, 50 (1996) (holding that a plaintiff may state a claim for unjust enrichment where his claim seeks restitution and other remedies are inadequate). And Texas courts have gone so far as to hold that "there is no 'cause of action' based on a 'claim' of unjust enrichment."[5] *Oxford v. Williams Cos., Inc.*, 137 F.Supp.2d 756, 761 (E.D. Tex. 2001).

Again, the differences between the states go well beyond mere nuance. Unjust enrichment is a legal claim in some states, and equitable in others. In still

---

[5] In Exhibit G to Plaintiff's Motion for Summary Judgment, plaintiff cites to "823 S.W.2d 39 (Tex. 1992)" as the Texas case setting forth the elements of unjust enrichment in that state. However, that citation is to a Missouri case and does not mention unjust enrichment.

more states, unjust enrichment is not even a separate claim.  Plaintiff cannot

maintain that there is any uniformity between the states.

   c. **Reliance requirements as to unjust enrichment**
     **vary from state to state.**

  The states' unjust enrichment laws also vary regarding reliance

requirements.  For instance, to recover on an unjust enrichment theory under

Alabama law, a plaintiff must "prove, among other things, that the 'donor of the

benefit . . . acted under a mistake of fact or in misreliance on a right or duty,'" and

in the absence of such a mistake or misreliance, "the recipient may have been

enriched, but he is not deemed to have been *unjustly* enriched."  *General Motors*

*Acceptance Corp. v. Dubose*, 834 So.2d 67, 78-79 (Ala. 2002)  (emphasis in original).

Similarly, Vermont courts consider whether the plaintiff relied on a representation

to its detriment in determining whether the defendant was unjustly enriched.  *DJ*

*Painting, Inc. v. Baraw Enterprises, Inc.*, 776 A.2d 413, 418 (Vt. 2001) .  Other

states such as Colorado, however, do not require a plaintiff to show reliance to prove

her unjust enrichment claim.  *See Ninth Dist. Production Credit Ass'n v. Ed*

*Duggan, Inc.*, 821 P.2d 788, 800 (Colo. 1991).

   d. **Statutes of limitations for unjust enrichment vary**
     **from state-to-state.**

  Furthermore, affirmative defenses for unjust enrichment laws vary across

the states.  Specifically, the statutes of limitations range from two to ten years.  *See*

*New Hotel Monteleone, Inc. v. First Nat. Bank of Commerce, Inc.*, 423 So.2d 1305,

1309 (La. App. 1982)  (stating that Louisiana unjust enrichment claims are subject

to a ten-year statute of limitations); *Estate of Waters v. Hoadley*, 464 P.2d 85 (1970)

(stating that the statute of limitations for unjust enrichment is six years in Alaska);

*Sundance Homes, Inc. v. County of DuPage*, 746 N.E.2d 254, 271 (Ill. 2001)

(applying a five year statute of limitations for an unjust enrichment claim in

Illinois); *Burns v. Dees*, 557 S.E.2d 32, 39 (Ga. App. 2001) (stating that a four-year

statute of limitations applies to unjust enrichment claims in Georgia) ; *Ashley v.*

*Eisele*, 247 Ark. 281, 445 S.W.2d 76, 82 (1969) (stating that the statute of

limitations for an unjust enrichment claim is three years in Arkansas) ; *Singer v.*

*City of Waco, Tex.*, 324 F.3d 813, 826 n. 7 (5th Cir. 2003) (stating that Texas has a

two-year statute of limitations for the remedy of unjust enrichment) .

The necessity of applying various statutes of limitations to the plaintiff's

claims is "fact intensive and individualized" and "may defeat predominance and

thus preclude class certification." *Corley v. Entergy Corp.*, 220 F.R.D. 478, 487

(E.D. Tex. 2004) . This action was filed on January 9, 2007.  Thus, assuming a

Texas court recognizes unjust enrichment as a cause of action, the two-year statute

of limitations would preclude purported class members who purchased One-A-Day

WeightSmart prior to January 9, 2005, from bringing suit.  However, purported

class members in other states who saw Bayer's advertisements or purchased One-A-

Day WeightSmart at approximately the same time might not be time-barred from

bringing an unjust enrichment claim.

### e. Dividing the putative class into sub-classes will not remedy the predominance and manageability problems resulting from the variance in unjust enrichment laws from state-to-state.

Plaintiff's cursory analysis of the various states' laws on unjust enrichment groups the states into three general camps, presumably suggesting that plaintiff will alternatively request that the Court certify three sub-classes in which the Court would apply three different standards to unjust enrichment claims. (*See* Exhibit G to Plaintiff's Motion for Class Certification). Plaintiff's failure to analyze the distinctions in the states' unjust enrichment laws, however, precludes these sub-classes from being an adequate solution. In fact, many courts have expressed concerns that the numerous vagaries and nuances inherent in the various states' unjust enrichment laws make class treatment difficult, if not impossible, and that sub-classes would not remedy the conflicts of law inherent in a claim for unjust enrichment. *See In re Graphics Processing Units Antitrust Litigation,* 527 F.Supp.2d at 1029 (stating that "these vagaries [of states' unjust enrichment laws] will raise serious issues of commonality and manageability on class certification"); *see also In re Prempro,* 230 F.R.D. at 563 (finding that "a review of the unjust enrichment . . . claims reveals that these laws cannot reasonably be grouped in a comprehensive manner that does not seriously impinge on the integrity of the law of each state").

At least one court has held that individual issues predominate, regardless of conflicts of law, where, as here, the unjust enrichment claim is based on the allegation that the defendant deceived consumers. *See Kelley*, 2008 WL 509332 at

*14  (holding that "[i]f the inequity [underlying the unjust enrichment claim] is that [Defendant] deceived consumers, the trier of fact will need to inquire whether [Defendant] actually deceived consumers (an individualized inquiry) to determine whether any benefit conferred on [Defendant] was unjust.  Common issues will not predominate on that type of unjust enrichment claim").[6]

As noted in *Prempro*, a class action plaintiff seeking certification "must establish that the variances in state laws could be overcome in a reasonable way." 230 F.R.D. at 565.  Plaintiff's incomplete analysis of the unjust enrichment laws fails to overcome this burden.  By providing an abbreviated review of the elements of the cause of action (assuming there is one in all states), plaintiff fails to address whether the claims can even be asserted under the existing circumstances.  Plaintiff further fails to address whether consumers in certain states would be precluded from bringing an action for unjust enrichment by virtue of the fact that he or she has an adequate remedy at law.  This incomplete analysis does not acknowledge other fundamental variations in the cause of action, such as the reliance requirement in some states, differing affirmative defenses, and the wide range of statutes of limitations.

In short, plaintiff has utterly failed to carry her burden to show that nationwide class treatment is an appropriate or even workable manner in which to dispose of the purported claims of consumers of Bayer's One-A-Day WeightSmart

---

[6] As stated by the Supreme Court of Vermont, "the success of a claim for unjust enrichment depends on the particular facts and circumstances of each case."  *DJ Painting, Inc. v. Baraw Enterprises, Inc.*, 776 A.2d 413, 419 (Vt. 2001).

product.  As was the case in *Prempro* and the many other cases cited above, state-to-state variations in the law applicable to the case preclude a finding of predominance here.

**B.    Common issues of fact do not predominate because the reliance and damages determinations are not susceptible of common proof.**

Plaintiff's effort to have any class—much less a nationwide class-certified in this case runs well afoul of the weight of recent authority.  In bringing a class action alleging consumer fraud under these facts,[7] plaintiff ventures into an area in which courts have adamantly refused to certify class actions.  The Eighth Circuit recently discussed this issue, explaining that "[b]ecause proof often varies among individuals concerning what representations were received, and the degree to which individual persons relied on the representations, fraud cases often are unsuitable for class treatment."  *In re  St. Jude Medical, Inc., Silzone Heart Valve Products Liability Litigation*, --- F.3d ----, 2008 WL 942274, *2 (8th Cir. Apr. 10, 2008).  Other courts have reached the same conclusion.  *See, e.g.*, *Gariety v. Grant Thornton LLP*, 368 F.3d 356, 362 (4th Cir. 2004) (stating that "[b]ecause proof of reliance is generally individualized to each plaintiff allegedly defrauded, fraud and negligent misrepresentation claims are not readily susceptible to class action treatment, precluding certification of such actions as a class action"); *Castano*, 84 F.3d at 745 (stating that "a fraud class action cannot be certified when individual reliance will

---

[7] Even though plaintiff characterizes her claim as one for unjust enrichment, the allegations of her complaint make it clear that the unjust enrichment claim is based upon alleged fraud.  The complaint alleges that plaintiff relied on alleged misrepresentations in at least six places.  (*See* Plaintiff's Second Amended Complaint at ¶¶ 2, 17, 19, 20, 22, and 33).

be an issue"); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir. 1998) (stating that claims "'requir[ing] proof of . . . whether the person justifiably relied on [a defendant's] statements to his detriment' are not susceptible to class-wide treatment").

The Second Circuit Court of Appeals recently decided a case in which issues of reliance prevented common issues of fact from predominating.  In *McLaughlin v. Amer. Tobacco Co.*, the plaintiffs alleged that tobacco companies used advertising to deceive them and other purchasers of "light" cigarettes into believing that those cigarettes were healthier than "full-flavored cigarettes."  -- F.3d ----, No. 06-4666, slip op. at 4 (2d Cir. Apr. 3, 2008) .  The plaintiffs in *McLaughlin* brought their claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), which required a showing of reliance because fraud was the predicate for the claim. *Id.*  In reversing certification of a class of light cigarette users, the Second Circuit discussed the proof required in cases where misrepresentations are alleged, holding that "proof of misrepresentation—even widespread and uniform misrepresentation—only satisfies half the equation." *Id.* at 12.  The "other half, reliance on the misrepresentation, cannot be the subject of general proof. Individualized proof is needed to overcome the possibility that a member of the purported class purchased light cigarettes for some reason other than the belief that lights were a healthier alternative." *Id.*

While the Second Circuit rejected the Fifth Circuit's "blanket rule" announced in *Castano*  prohibiting certification of any case involving individual

reliance, the court was able to suggest only one type of case that would evade that prohibition and be subject to common proof—a case in which a plaintiff relied on a "financial representation," which the court distinguished from consumer fraud cases because "a financial transaction does not usually implicate the same type or degree of personal idiosyncratic choice as does a consumer purchase." *Id.* at 16–17 n.7. Clearly, consumer purchase cases are not subject to common proof.

*Prempro* is particularly instructive on this point.  In that case, the plaintiffs sought certification of a class in a suit against the manufacturer of a prescription drug authorized for post-menopausal women in which the plaintiffs alleged consumer fraud premised upon general advertising, "direct-to-consumer" advertising, and other marketing tools that the manufacturer used to "orchestrate widespread misunderstanding among the general public and the medical community" on the benefits and risks of hormone replacement therapy.  *In re Prempro*, 230 F.R.D. at 557.  Common issues of fact did not predominate because the plaintiffs' consumer fraud claim "require[d] individualized proof concerning reliance and causation." *Id.* at 567 (citing *In re Rezulin Products Liability Litigation*, 210 F.R.D. 61, 66–67 (S.D.N.Y.2002)).  Accordingly, "[w]hether a plaintiff saw an advertisement; whether the particular advertisement was fraudulent; whether that plaintiff relied on the advertisements; and whether the plaintiff was damaged as a result of the advertisement are all individual questions of fact." *Id.* The court in *Prempro* also found that individual class members might also have seen different advertisements at different times, making the effects of those

advertisements different as to each class member.  *Id.*  The Court thus concluded that common issues of fact did not predominate and denied class certification.

In the present case, factual issues common to the class would not predominate as to the proof of liability against Bayer.  Factual issues related to the class members' reception of advertisements, reaction to advertisements, and any damages are all highly individualized issues of fact.  According to Dr. Richard Semenik, an expert in advertising, all consumer decisions are highly individualized; consumers rely upon numerous factors unique to each consumer and to each decision.  (Exhibit 2 at ¶ 9).

Indeed, plaintiff's own deposition testimony demonstrates the individualized nature of purchases in practice.  Plaintiff testified that she has tried a variety of "diet products," and her reasons for purchasing the products differed with nearly every product, including her reliance (or lack thereof) on various sorts of advertisements.  (Exhibit 1 at 56–74).  Thompson tried the following products for the stated reasons:

- Xenedrine—saw no commercials, purchased because she saw it on the shelf at Wal-Mart (Exhibit 1 at 56);

- TrimSpa—purchased because she saw commercials (Exhibit 1 at 61);

- CortiSlim—saw no commercials, purchased because she saw it on the shelf at Wal-Mart and read packaging (Exhibit 1 at 64);

- CortiSlim Burn—purchased because she saw in the store, prompting her to read testimonials on the internet (Exhibit 1 at 67–68);

- Hydroxycut—purchased after seeing one television commercial and seeing packaging featuring a "nice, lean body" (Exhibit 1 at 73–74).

Plaintiff's experience in purchasing several different products demonstrates that even the same individual can purchase what she perceives as similar products at different times for a variety of different reasons.  Suffice to say, a large group of consumers like the proposed class in this case have an even greater variety of reasons for purchasing products, and proving a claim against Bayer for false advertising representations will  at the very least require inquiry into the representations to which each consumer was exposed, what they relied upon, and on each purchaser's individual reasons for making their purchase(s).  That necessity defeats predominance here.

The same difficulties presented by class treatment of this case as to liability and causation issues, of course, also present in the analysis of *McLaughlin* also points out that damages in such cases present overwhelming individual issues related to proving out-of-pocket losses.  Plaintiffs cannot prove such losses "by common evidence because they constitute an inherently individual inquiry: individual smokers would have incurred different losses depending on what they would have opted to do, but for defendants' misrepresentation." *McLaughlin*, slip op. at 24.  For example,

> smokers who would have purchased full-flavored cigarettes instead of Lights had they known that Lights were not healthier would have suffered no injury because Lights have always been priced the same as full-flavored cigarettes.  By contrast, those who would have quit smoking altogether could recover their expenses in purchasing Lights.

> And those who would have continued to smoke, but in greater
> moderation, could recover something in between.

*Id.* Accordingly, individual questions predominated on the issue of out-of-pocket

losses, and the plaintiffs failed to meet their burden of proving that their injuries

were amenable to common proof. *Id.*

The same sorts of individual issues predominate in the present case.

Assuming that Bayer misrepresented the characteristics of One-A-Day

WeightSmart, those misrepresentations alone would not prove damages for the

class members. A class member who would not have purchased any multivitamin

but for the alleged misrepresentations would necessarily have out-of-pocket

damages different from those of a class member who would have purchased a

multivitamin regardless of whether it was One-A-Day WeightSmart. A class

member who purchased One-A-Day WeightSmart without relying on any

representations would suffer no damages. Each of these determinations is specific

to each proposed individual class member.

In her motion seeking certification, plaintiff glosses over the requirement of

individualized proof of liability and damages arguing simply that Bayer's conduct

was "deceitful as to every class member" and that "each and every product sold was

uniformly marketed with nationally made statements." (Plaintiff's Brief at 17.)

This conclusory argument is simply not enough. In order to prove liability and

causation, members of the putative class will be required to show that they were

exposed to and relied upon particular advertisements or representations —a process

that will involve few if any "common" issues. As to damages, plaintiffs assert that

"calculation of damages does not rely upon individual issues." (Plaintiff's Brief at 18.) Plaintiffs are incorrect in this regard—in fact, the proof and calculation of damages will involve exclusively individual issues, as each class member will have purchased products at different places, at different times, and for different amounts.

Accordingly, common questions of fact do not predominate in determining the injuries at issue here.

### C.   A class action is not a superior means of adjudicating the claims in this matter because the class is unmanageable.

In *Prempro*, the court noted that "the failure to show predominance spills over into superiority" under Rule 23(b)(3). *In re Prempro*, 230 F.R.D. at 568. When certification would require the application of multiple state laws, a case becomes unmanageable, rendering class action treatment an inferior method of adjudication. *Id.*; *see also Andrews v. American Tel. & Tel. Co.*, 95 F.3d 1014, 1024–25 (11th Cir. 1996); *Castano*, 84 F.3d at 741–44. Accordingly, the *Prempro* court held that "because the law varies in material ways from state to state and because individual factual determinations saturate Plaintiffs' common law claims," a class action was not the superior method for the resolution of those cases. *In re Prempro*, 230 F.R.D. at 568 (citing *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002); *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206 (E.D. Pa. 2000); *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 674 (7th Cir. 2001)).

The present case presents a situation almost identical to that in *Prempro*, and the result should be the same. Plaintiff seeks certification of a class that would require this Court to apply the laws of all fifty states to a class of plaintiffs that

would require individual scrutiny of the pertinent factual issues.  Under these circumstances, a class action cannot be a superior means of adjudicating the disputes because a class action would be unmanageable.

## IV.   Plaintiff has not proven the elements of commonality, typicality, and adequacy of representation as required by Rule 23(a).

Though Bayer does not dispute that plaintiff can satisfy the numerosity requirement, plaintiff has failed to satisfy the other three Rule 23(a) requirements. Her failings on these requirements stem from essentially the same reason—the nature of the unjust enrichment claim that plaintiff is pursuing requires an extensive set of individual determinations.  Accordingly, the Court should deny certification of the class.

### A.   Plaintiff cannot satisfy the commonality requirement because the claims against Bayer involve individual factual situations that require significantly different presentations of proof, even with regard to otherwise common issues.

When courts find commonality to be lacking, that determination is frequently premised upon findings that the claims involve individual factual situations that require significantly different presentations of proof, even with regard to otherwise common issues.  5 *Moore's Federal Practice* § 23.23[4][h] (Matthew Bender 3d ed.) (citing several cases from various jurisdictions holding that individualized issues barred a finding of commonality).  Accordingly, some cases will present factual situations where the need for individualized determinations of some issues

"obscures or outweighs the common questions."[8]  *Id.*   In other words, a plaintiff cannot meet the commonality requirement "where Plaintiffs' proposed common questions are inherently individualized, requiring inquiry into the particular circumstances" of each class member.  *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 (E.D. Pa. 1995).

The need for individualized determinations of many of those facts might obscure or outweigh the common questions.  As Judge Wilson noted in rejecting an attempt to certify a similar class, "[w]hether a plaintiff saw an advertisement; whether the particular advertisement was fraudulent; whether that plaintiff relied on the advertisements; and whether the plaintiff was damaged as a result of the advertisement are all individual questions of fact."  *In re Prempro*,, 230 F.R.D. at 567. [9]  The same issues are present here, and the individual analysis required for these key issues precludes a finding of commonality in this case.  Even if plaintiff can ultimately demonstrate that Bayer made false statements about One-A-Day WeightSmart, proving the case will require significantly individual showings of proof as to each purchaser of the product.  Moreover, as demonstrated in the choice-of-law discussion in the foregoing section of this brief, the application of law is a

_____

[8] The commonality requirement frequently overlaps significantly with Rule 23(b)(3)'s predominance requirement.  Accordingly, the discussion in this section applies to the predominance analysis as well, though the predominance standard is a much more difficult standard for a plaintiff to satisfy.  The section on predominance *supra* thus contains a more detailed analysis of some of these issues.

[9] The *Prempro* court did not reach the Rule 23(a) requirements because it first found that the plaintiffs in that matter could not satisfy any of the Rule 23(b) requirements.

similarly individual exercise, requiring the application of fifty separate laws.
Plaintiff thus cannot satisfy the commonality requirement.

> **B.** **Plaintiff cannot satisfy the typicality requirement because proof of a violation of law requires individualized inquiry.**

Typicality under Rule 23(a)(3) means that there are "other members of the class who have the same or similar grievances as the plaintiff." *Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). This requirement is "intended to assure the claims of the class representatives are similar enough to those of the class, so that the representatives will adequately represent the class." *In re Baycol Products Litigation*, 218 F.R.D. 197, 205 (D.Minn. 2003) (quoting *Day v. NLO, Inc.*, 144 F.R.D. 330, 334 (S.D.Ohio 1992)).  Courts thus consider whether the representative's interests will be aligned with those of the proposed class, as well as whether in pursuing her own claims, the named plaintiff will also advance the interests of the class members.  *In re Baycol*, 218 F.R.D. at 205 (citing *In re: American Medical Systems, Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)).

The Eighth Circuit has held that the presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry. *Elizabeth M. v. Montenez*, 458 F.3d 779, 787 (8th Cir.2006) (citing *Parke v. First Reliance Stnd. Life Ins. Co.*, 368 F.3d 999, 1004-05 (8th Cir. 2004)).  Other courts have held that typicality does not exist where a putative class is exposed to a varied mix of representations communicated through different channels and absorbed in different ways and to different degrees.  *See, e.g., Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (en banc), *cert. denied*, 524 U.S. 923 (1998)

(holding that there was no typicality because the claims "depended on each individual's particular interactions with GM—and these, as we have said, varied from person to person. A named plaintiff who proved his own claim would not necessarily have proved anybody else's claim"); *In re Sears, Roebuck & Co. Tools Marketing & Sales Practices Litigation*, No. MDL–1703, slip op. at 15–16 (N.D. Ill. Dec.4, 2007) (holding that typicality was lacking because the retailer's advertising varied greatly in substance and in medium of transmission and because the resulting causation issues for the class would differ too greatly); *In re Sears Retiree Group Life Ins. Litig.*, 198 F.R.D. 487, 491 (N.D. Ill. 2000) (holding that typicality was lacking where retirees received information about a retirement plan through a variety of different channels); *Clay v. American Tobacco Co.*, 188 F.R.D. 483, 490 (S.D. Ill. 1999) (holding that typicality was lacking because the class members in a case alleging that tobacco companies targeted young people with advertising "were not subjected to the same advertising and that advertising did not have a similar effect on all members"). In other words, the fact that a defendant made allegedly false representations does not establish typicality.

The present case presents a situation nearly identical to those in the cases cited in the preceding paragraph. Plaintiff insists that typicality is present because "claims of all the putative members of the proposed class arise from the same conduct" by Bayer. (Plaintiff's Brief at 14). This assertion, however, is insufficient to demonstrate typicality. As the *Clay* court stated in finding that the claims involved were "not sufficiently typical of the class to support class certification,"

> every claim under which the plaintiffs seek relief requires a showing of causation between the alleged misconduct and the damages.  The causal connection necessarily requires a showing that the advertising reached each class member.  However, **all members of the proposed class were not subjected to the same advertising and that advertising did not have a similar effect on all members.  To the extent that the advertising actually reached the class members, it arrived through different mediums and with greatly varying degrees of success**. . . . Given the great variances between the named plaintiffs' claims and each proposed class member's claims, **it would be unfair to hold the class members accountable for the named plaintiffs' potential insufficiencies in proving their case**.

188 F.R.D. at 49293 (emphasis added) .

As plaintiff characterizes the advertising for One-A-Day WeightSmart, Bayer "advertised in national magazine publications, national television, and cable television." (Plaintiff's Brief at 4).  The Federal Trade Commission order that plaintiff attached to her motion as Exhibit B identifies six separate television commercials, a print advertisement, an internet advertisement, and the product packaging as containing allegedly improper claims.  (Exhibit B to Plaintiff's Motion at 4–7).  A purchaser might have learned about One-A-Day WeightSmart through a variety of other channels as well, including "word of mouth" testimonials from other purchasers or merely picking up a familiar brand name.  Purchasers of the product obviously experienced those advertisements—if they encountered them at all—in differing combinations over different periods of time and made their purchasing decisions for a variety of different reasons.  In such a case, plaintiff's claim, based as it is upon one set of discrete exposures to advertising, cannot be typical.

The nature of the interplay between those different types of advertising and plaintiff's own personal background and motivations for purchasing a product also

undermines plaintiff's claim of typicality.  Dr. Semenik points out that purchasing

decisions are based upon numerous individual factors that vary from purchase to

purchase.  (Exhibit 2 at ¶ 9).  Plaintiff's own individual background as a medical

professional and her personal knowledge obtained from internet research give her

an idiosyncratic profile that can hardly be deemed typical of a One-A-Day

WeightSmart purchaser.  (Exhibit 2 at ¶¶ 9, 11, 12, and 13).  Accordingly, her

purchase decision was based information that differed from that of other

purchasers, and her processing of that information differed as well.  (Exhibit 2 at

¶ 15).  Plaintiff is not a typical purchaser.  (Exhibit 2 at ¶ 18).

     **C.**    **Plaintiff has failed to prove adequacy of representation because her claim is atypical.**

The adequacy of representation requirement of Rule 23(a)(4) takes on

"critical importance in every class action." *Hervey*, 787 F.2d at 1230 (citing *Dirks*

*v. Clayton Brokerage Co. of St. Louis, Inc.*, 105 F.R.D. 125, 133 (D. Minn. 1985)).

Adequacy of representation "entails the concern over whether the class

representatives and their counsel will competently and vigorously pursue the

lawsuit and the concern that differences exist between the interests of the class

representatives and the class." *Id.*

Plaintiff's adequacy as a class representative is compromised by the

atypicality of her claims.  As the Sixth Circuit has observed, the "adequate

representation requirement overlaps with the typicality requirement because in the

absence of typical claims, the class representative has no incentive to pursue the

claims of the other class members." *In re: American Medical Systems, Inc.*, 75 F.3d

1069, 1083 (6th Cir. 1996) .  As discussed in the foregoing section, plaintiff's claims are not typical of the class.  The lack of typicality necessarily renders plaintiff inadequate to represent the class.

## CONCLUSION

Plaintiff has requested that this Court certify a class action in which she cannot prove any prerequisite but numerosity.  Plaintiff has failed to designate a sufficiently identifiable class, instead designating a class of people that includes some consumers who might not have any injury in fact.  Moreover, a consumer fraud case like this one requires extensive individual factual inquiry, and the nationwide class requires the application of fifty separate laws, both of which defeat predominance under Rule 23(b)(3).  The resulting unmanageability defeats the argument that a class action is a superior means of resolving the claims.  Moving beyond Rule 23(b)(3), plaintiff fails to prove commonality, typicality, and adequacy of representation under Rule 23(a) as well.  Given the complete failure of proof on the elements required to obtain certification of a class issue, the Court should deny plaintiff's motion for certification.

Respectfully submitted:

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442


By /s/ Gary D. Marts, Jr. (2004116)
    Edwin L. Lowther, Jr. (81107)
    Gary D. Marts, Jr. (2004116)
    Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2008, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system, which shall send notification of such

filing to the following:

Mr. James C. Wyly (jwyly@pattonroberts.com)
Mr. Jack T. Patterson, II (jpatterson@pattonroberts.com)
Mr. Eric D. Wewers (eric@edwlaw.com)
Mr. Darren O'Quinn (Darren@darrenoquinn.com)
Mr. Jeremy Hutchinson (jhutchinson@pattonroberts.com)
Mr. Sean Fletcher Rommell (srommel@pattonroberts.com)

*Attorneys for Plaintiff*

/s/ Gary D. Marts, Jr. (2004116)
Gary D. Marts, Jr. (2004116)
Attorneys for Defendants
WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
E-MAIL: gmarts@wlj.com

758747-v1

40