IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

MYSTIC THOMPSON, Individually
And On Behalf Of All Others
Similarly Situated                                                      **PLAINTIFF**

V.                                    NO. 4-07-CV-0017 JMM

BAYER CORPORATION;
BAYER HEALTHCARE, LLC                                        **DEFENDANTS**

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORTOF MOTION FOR CLASS CERTIFICATION OF AN ARKANSAS STATE CLASS

Pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure,

Plaintiff Mystic Thompson submits this Memorandum of Law in Support of her Motion

for Class Certification for the following class:

> All residents and citizens of the State of Arkansas who purchased One-A-Day Weight Smart from December 1, 2003 up through January 4, 2007, the date Defendants entered the Consent Judgment with the FTC to stop all marketing claiming the pill enhanced metabolism. Excluded from this Class are all officers, directors, and employees of the Defendants and its subsidiaries, along with any currently sitting Federal Judge or their staff in this case or potential appellate justice and any person within the third degree of consanguinity to the judge or justice. Further excluded is any person claiming personal injury.

## I.    INTRODUCTION

On February 12, 2009, this Court issued an Order denying Plaintiff's motion to

certify a nation-wide class action. Based upon Plaintiff's alternative claims for a smaller

class action, the Court ordered that Plaintiff had 30 days to brief an alternative class

action. As such, Plaintiff submits this brief in support of an Arkansas only class action as defined above. Furthermore, Plaintiff incorporates her previous motions, briefs and oral arguments presented in this matter as though set out verbatim. Finally, Plaintiff's exhibits presented in the original motion, and now of which are part of the record, are hereby incorporated herein in support of the present motion.

As set forth below, Plaintiff respectfully submits this action stems from a marketing scheme by Defendants to the detriment of Arkansas consumers who purchased Defendants' products. It is believed Defendants' marketing scheme affected thousands of Arkansas consumers and unjustly enriched Defendants with millions of dollars. The facts of this case are ideal for class certification under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

This case involves Defendants' marketing of One-A-Day Weight Smart, a pill Defendants claimed increased the metabolism of individuals over the age of thirty. Defendants began their marketing scheme in 2003. Defendants claimed that their pill would reverse the slowing metabolism in the aging population. Defendant claimed their pill enhanced metabolism because it contained EGCG from extract of green tea and other ingredients. *See* Exhibit A previously filed with the Court in support of Plaintiff's motion for a national class action.

Defendants advertised their metabolism enhancement claims despite no competent, reliable scientific evidence to substantiate them. Defendants continued to make claims of enhanced metabolism after the Federal Trade Commission (FTC) ordered Defendant to stop making claims that were not supported by credible science. *See* Exhibit B previously filed with the Court in support of Plaintiff's motion for a national

2

class action. Due to Defendants' continued marketing of One-A-Day Weight Smart, they were fined $3.2 million by the FTC, along with numerous other questionable mass marketers of fake diet pills. *See* Exhibit B previously filed with the Court in support of Plaintiff's motion for a national class action.

Plaintiff brings her claim for herself and putative class members of the State of Arkansas to recover the money bilked from consumers and unjustly enriching Defendants. Each putative member of the class was subjected to the same overarching marketing scheme and metabolism enhancement claims made by Defendants. Each putative member of the class paid for the same ineffective pill. Common questions of law and fact will predominate over any individual issues that may arise or that Defendants may urge. Class action treatment is also a superior means for resolving this action with putative class members numbering in the thousands and claiming the same relief. In this type of case, there is a strong likelihood of duplicative litigation, unnecessary costs and inefficient waste of judicial resources in the absence of class certification. More importantly, the consumers' damages are so small they render individual actions impractical. Without this class, Defendants would receive a windfall as a result of their marketing scheme.

Plaintiff readily satisfies the procedural requirements of Rules 23(a) and 23(b)(3) for a class action of Arkansas citizens and residents. Plaintiff respectfully requests that the Court grant her Motion for Class Certification in its entirety and that the case proceed on its merits.

## II.     STATEMENT OF FACTS

### A.     Background

Plaintiff asserts the class-wide evidence demonstrates that Defendants engaged in an unsubstantiated marketing campaign to sell their One-A-Day Weight Smart pills to Arkansas consumers. This orchestrated con was based entirely on Defendants' uniform representations made about the performance of their product when Defendant had no reliable information upon which to base the assertions. The target of Defendants' marketing scheme was primarily consumers age thirty and older who were having trouble keeping their weight under control. *See* Exhibits A and B previously filed with the Court in support of Plaintiff's motion for a national class action. The described purpose of One-A-Day Weight Smart was as a metabolism enhancer for the aging population whose metabolisms were naturally slowing. *See* Exhibits A and B previously filed with the Court in support of Plaintiff's motion for a national class action.

To reach the widest possible audience, Defendants advertised throughout Arkansas *via* national and local publications and through national and local television broadcasts. *See* Exhibits B and C previously filed with the Court in support of Plaintiff's motion for a national class action. Defendants sold the product through national retail giants such as Wal-Mart, Walgreens, Kroger, GNC, and Target, as well as over the internet. *Id.*

To entice the target market of aging individuals, Defendants, through their advertisements, repeatedly referred to the slowing metabolism of the aging population and how One-A-Day Weight Smart helped combat a slowing metabolism, thereby leading to weight loss, weight control, less dieting, and the necessity for less physical

activity. *See* Exhibits A and B previously filed with the Court in support of Plaintiff's motion for a national class action. The final prong of Defendants' marketing scam consisted of Defendants' international name recognition and the claim that One-A-Day Weight Smart's efficacy was supported by science. *See* Exhibit D previously filed with the Court in support of Plaintiff's motion for a national class action. Further, Defendants' product labels were uniform in their substance. *See* Exhibits A and B.

**B.     Arkansas Law of Unjust Enrichment**

Defendants conceded at the October 20, 2008, hearing on the motion for certification that if an Arkansas only class was before the Court, Arkansas law would apply:

> THE COURT: I guess the Arkansas class eliminates the constitutional arguments and the choice-of-law arguments?
>
> MR. MARTS: Yes, sir.  It eliminates those and, obviously, there wouldn't be any dispute over that.  That the issues of law.

October 20, 2008, Hearing Before Honorable James M. Moody, page 155:15-19.  As such, for the purposes of any Rule 23 analysis, Arkansas law applies.

In order to establish a claim for unjust enrichment under Arkansas law, Plaintiff must show a benefit was conferred upon Defendants by Plaintiff and acceptance or retention of the benefit by Defendants under such circumstances as to make it inequitable for the Defendants to retain the benefit and should be required to make restitution. *See R.K. Enterprises, LLC, et al v. Pro-Comp Management, Inc. et al,* 372 Ark. 1999, __ S.W.3d __ (2008).  As indicated by the Court in its order dated February 12, 2009, "Courts in Arkansas do not require a tortuous, illegal or *fraudulent* act by the defendant to prove unjust enrichment."  Order dated February 2, 2009, (emphasis added) (citing

*Frigillana v. Frigillana,* 584 S.W.2d 30 (Ark. 1979). Further, this Court has already stated, "'Unjust enrichment does not require a wrongful act by the party enriched. Even an innocent defendant is subject to an unjust enrichment claim brought by a more deserving party.'" Order dated February 12, 2009, page (quoting Howard W. Brill, Law of Damages, § 31:2 (5th ed. 2004) (citing *Malone v. Hines,* 822 S.W.2d 394 (Ark. App. 1992); *Orsini v. Commercial National Bank,* 639 S.W.2d 516 (Ark. App. 1982)). As such, the essential question concerning unjust enrichment is whether the defendant obtained something of value to which they were not entitled, to the detriment of the plaintiff. *See Frigillana v. Frigillana,* 266 Ark. 296, 584 S.W.2d 30, (1979). Furthermore, under Arkansas law, a plaintiff may pursue an unjust enrichment claim against a defendant even when there is no privity between the parties. *See* Order dated February 12, 2009, page 8; *see also Smith v. Whitener,* 42 Ark. 225, 856 S.W.2d 328 (Ark. App. 1993).

## C.   The Proposed Class Representative

Plaintiff Mystic Thompson resides in Benton, Saline County, Arkansas. She has been a licensed registered nurse since 2003. Mrs. Thompson works at Rivendale in Benton , where she has been employed for four (4) years. Mrs. Thompson is married to Rochorn and has two (2) children ages one (1) and two (2).

Like many professional women with families, Mrs. Thompson was looking for a product to give her help with weight loss. She purchased One-A-Day Weight Smart on two (2) occasions, on or about November 2005 and January 2006. Plaintiff demonstrates by her declaration that she has a keen interest in pursuing and monitoring this litigation. *See* Exhibit H, previously filed with the Court in support of Plaintiff's motion for a

national class action, Declaration of Mystic Thompson.  Plaintiff understands and accepts the responsibilities associated with being a class representative.  *Id*.  Furthermore, Plaintiff was present and even testified at the October 20, 2008, hearing on the original motion for certification, evidencing her willingness to be a class representative and supporting her allegations of the purchases of Defendants' product.

## II.   **ARGUMENT**

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure.  The decision on whether to certify a class action is within the discretion of the district court. See *Coleman v. Watt*, 40 F.3d 255, 259 (8th Cir. 1994); *Morgan v. United Parcel Serv.*, 169 F.R.D. 349, 354 (E.D. Mo. 1996).  In determining whether to certify a class action, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed. 2d 732 (1974) (citations omitted).  Thus, while the Court must conduct a "rigorous analysis," (see *Gen. Tel. Co of the Southwest v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L.Ed. 2d 740 (1982)), class certification is a procedural determination and should not include an inquiry into the merits of the plaintiff's claims. *Eisen*, 417 U.S. at 177-78. The plaintiff moving for class certification has the burden of showing that the requirements under Rule 23 are met. *Coleman*, 40 F. 3d at 259.

In order to be certified under Rule 23, the class must satisfy the four prerequisites set forth in Rule 23(a). *Lang v. Kansas City Power & Light Co.*, 199 F.R.D. 640, 644 (W.D. Mo. 2001); *Paxton v. Union National Bank*, 688 F. 2d 552, 559 (8th Cir. 1982). These requirements are met if: 1) the class is so numerous that joinder of all members is

7

impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). The prerequisites for class certification under Rule 23(a) are commonly referred to as "numerosity, commonality, typicality, and adequacy of representation." *General Telephone Co. v. EEOC*, 446 U.S. 318, 330, 100 S. Ct. 1698, 1706, 64 L. Ed. 2d 319 (1980).

Class-wide evidences establishes that Defendants controlled the formula, marketing schemes, and advertising, and they knew or should have known the pill failed to enhance metabolism and control weight as advertised. Due to Defendants' marketing scheme, Plaintiff and putative class members purchased the product which did not possess the qualities represented to the public. This theme is consistently applied to all putative class members. This action exists to ensure a fair remedy for the named Plaintiff and for all putative class members who spent their hard earned money due to Defendants' misleading lies. Those who are given the privilege of profiting from the selling of goods nationwide must be held accountable when they fail to act with honesty.

In addition to the requirements under Rule 23(a), the class must be maintainable under the requirements of Rule 23(b). *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 2245 (1997). A class action is maintainable under Rule 23(b)(3) if common questions of law or fact predominate over individual issues and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

8

1.     **The Requirements of Rule 23(a) are Satisfied.**

Under Rule 23(a), a case may proceed as a class action when plaintiff's action satisfies four threshold requirements:

(1)     The class is so numerous that joinder of all members is impracticable;

(2)     There are questions of law or fact common to the class;

(3)     The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)     The representative parties will fairly and adequately protect the interests of the class.

"In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *Coleman v. Watt*, 40 F.3d 255, 258-59 (8th Cir. 1994).  The Rule 23(a) prerequisites for class certification are commonly referred to as "numerosity, commonality, typicality, and adequacy of representation." *Gen. Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 330 (1980).  As set forth below, Plaintiff has pled allegations demonstrating that she satisfies all of the elements of Rule 23 (a).

**A.     Rule 23(a)(1)  Numerosity is Satisfied.**

A class must be so large that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a) (1).  *In re Fed. Skywalk Cases,* 680 F.2d 1175, 1178 (8th Cir. 1982); *In re Prempo,* 230 F.R.D. 555, 573 (E.D. Ark. 2005).  Plaintiffs need not show that joinder would be impossible, rather they need only demonstrate that joining of all members of the class would be difficult or impracticable.  *In re Prempro,* supra; 7A Wright, Miller & Kane §1762 & n. 7.  Moreover, Plaintiffs need not specify an exact number of class members and need show only "some evidence or reasonable estimate of the number of

9

purported class members." *Wakefield v. Monsanto Co.,* 120 F.R.D. 112, 115 (E.D. Mo. 1988) (internal citations omitted). Numerosity may be shown through common sense assumptions. *Hage v. General Serv. Bureau,* Case no. 8:01CV367, 2002 U.S. Dist. LEXIS 16774, *8 (D. Neb. March 26, 2002)(*citing Zeidman v. J. Ray McDermott & Co.., Inc.* 651 F.2d 1030, 1039 (5th Cir. 1981) (citing J. Newberg, Class Actions § 8812, at 836 (1977))("federal courts are quite willing to accept common sense assumptions in order to support a finding of numerosity."); *see also, e.g., Biben v. Card,* No. 84-0844-CV-W-6, 1986 WL 119, at *13 n.7 (W.D. Mo. Jan. 6, 1986).

There is no absolute number that satisfies the numerosity requirement, although courts have recognized that a class of approximately forty members generally meets the standard. *See Lockwood Motors, Inc. v. General Motors Corp.,* 162 F.R.D. 569, 574 (D. Minn. 1995)("In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.")(citing treatise); *see also Morgan,* 169 F.R.D. at 355 (noting that courts within the Eight Circuit have certified classes with fewer than forty members).

Plaintiff anticipates that Defendants will acknowledge that numerosity is established.[1] From 2002 to 2006, Defendants sold nationwide 174 million dollars worth of One-A-Day Weight Smart and sold approximately 1.5 billion One-A-Day Weight Smart pills. *See* Exhibit I previously filed with the Court in support of Plaintiff's motion for a national class action. Certainly a portion of these sales were made to numerous

---

[1] At the October 20, 2008, hearing, Defendants' counsel stated, "Bayer will stipulate to numerosity." . . . . and "Ultimately, I think plaintiff can't make the necessary showing here on *anything other than numerosity,* and having failed that, I think the Court should deny the motion." October 20, 2008, Hearing before Honorable James M. Moody, pages 42:2 and 164-65:24-1 (Emphasis added).

residents and citizens of Arkansas.   Clearly, these facts overwhelmingly establish the existence of numerosity in this case.

**B.      Rule 23(a)(2)  Commonality is Satisfied.**

Class members must share common questions of law *or* fact. Fed. R. Civ. P. 23(a)(2).   All class members share common issues of liability and causation as they were all injured by the Defendants' conduct. The commonality requirement is "not demanding" *Mullen v. Treasure Chest Casino, L.L.C.,* 186 F.3d 620, 625 (5th Cir. 1999); see 1 Conte & Newberg §3.10 ("this requirement is easily met in most cases") The test is met when the resolution of at least one issue will affect all, or substantially all, of the putative class members. *Mullen,* 186 F.3d. at 625. Commonality does not require that class members hold every issue in common. *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 561 (8th Cir. 1982). The rule can be met "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Becnel v. KPMG LLP,* 229 F.R.D. 592, 596 (W.D. Ark. 2005)(quoting *Paxton,* 688 F.2d at 561). Common questions of liability are sufficient to establish commonality. *Becnel,* 229 F.R.D. at 596.

Plaintiff alleges Defendants engaged in a common course of conduct based  upon a uniform formula for the pill and a uniform marketing campaign that applies to all Arkansas consumers who purchased the product.  Plaintiff further alleges that Defendants' advertisements for increased metabolism were uniformly  unsupported by science. Finally, Plaintiff alleges it would be inequitable and unjust for Defendants to retain the money derived from their sale of a product that does not and can not perform as

stated. At least the following core questions of law or fact would be presented with respect to each and every putative class member:

1. Whether Defendants made uniform statements to Plaintiff and consumers that One-A-Day Weight Smart had certain characteristics, uses, benefits or qualities.

2. Whether Defendants failed to accurately and fairly advertise and market their One-A-Day Weight Smart pill.

3. Whether Defendants advertising claims regarding One-A-Day Weight Smart's ability to increase metabolism were supported by credible scientific evidence.

4. Whether One-A-Day Weight Smart in fact increases the metabolism of the aging population.

5. Whether, in fact, consumers only had to "lift, twist and bend"[1] to increase their aging metabolisms.

6. Whether Defendants' acts constitute violations of the applicable law for which Plaintiff and other putative members of the class are entitled to recover damages or other relief to which they may be entitled, to include, but not limited to, actual damages, restitution, unjust enrichment or injunctive relief.

7. Whether Defendants communications and statements disseminated to Plaintiff and other putative members of the class omitted or misrepresented material facts about One-A-Day Weight Smart.

8. Whether Defendants knew or should have known of the alleged misrepresentations or omissions in the communications and statements disseminated to Plaintiff and other putative members of the class.

Moreover, most of Defendants affirmative defenses, if any, raise common class wide questions of law or fact – which further militates in favor of class treatment. The Rule 23(a) commonality requirement is easily met.

---

[1]   This is meant to serve only as one example of the numerous false assertions made by Defendants.

## C.     Rule 23(a)(2)  Typicality is Satisfied.

The third requirement of Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a).  The Rule 23(a) typicality requirement is satisfied when the claims of named plaintiffs emanate from the same or similar legal theory as the claims of the class members. *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) *DeBoerv. Mellon Mortgage Co.*, 64 F.3d 1171, 1175 (8th Cir. 1995).

The typicality inquiry proposes "to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 311 (3rd Cir. 1998).  When the same conduct affects the named plaintiffs and the class, the typicality requirement is usually met regardless of varying fact patterns which underlie individual claims.  "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). Plaintiffs need only demonstrate that there are other members of the class who have similar grievances. *Donaldson v. Pillsbury Co.*, 554 F. 2d 825, 830 (8th Cir. 1977); *In re St. Jude Medical Inc., Silzone Heart Valve Products Liab. Litig.*, 2003 U.S. Dist. LEXIS 5188 (D. Minn. 2003) (St. Jude I); *Coleman v. Block*, 562 F. Supp. 1353, 1357 (D.N.D. 1983). If the similarity of legal theories is strong, a plaintiff's claims will be viewed as typical of class members' claims despite "substantial factual differences." *Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 575 (D.Minn.1995).

Here, the claims of all the putative members of the proposed class arise from the same conduct by Defendants, and Plaintiff asserts the same legal claims for herself as she does on behalf of the proposed class that she seeks to represent. Moreover, Plaintiff and class members not only share the same legal theories they also share the same basic facts and theories of recovery. Plaintiff, like all class members, was sold a pill Defendants claimed enhanced metabolism. Defendants through their uniform actions applicable to all class members, are uniformly liable for all class member injuries, regardless of any possible issues surrounding individual members' damage amounts. *See Sonmore v. CheckRite Recovery Servs., Inc.* 206 F.R.D. 257, 262 (D. Minn. 2001)(typicality not defeated if class members may have had "differing levels or types of damages.") The fact that there may be variations in amount of damages suffered by each class member is of no consequence. The character of the damage is the same – Plaintiff and other members of the class purchased Defendants' product that can not and does not enhance metabolism.

Whether a class member purchases one bottle of One-A-Day Weight Smart or five does not defeat typicality. Put simply, Defendant is responsible for the selling of their product to to Plaintiff and the class members and for the retention of monies paid for a benefit not conferred with those purchases. Therefore, Plaintiff's goals are the same as the putative class members and she will work to benefit the entire class. This is the hallmark of typicality.

**D.**     **Rule 23(a)(4)  Adequacy of Representation is Satisfied.**

The final Rule 23 (a) requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). To fulfill the

14

requirement, two factors must be satisfied. First, the representatives' attorney must be qualified, experienced, and generally able to conduct the litigation. *Gentry v. C & D Oil Co.*, 102 F.R.D. 490, 493 (D.C. Ark. 1984); *Leach v. Standard Register Co.*, 94 F.R.D. 621 (W.D. Ark. 1982). Second, the suit must not be collusive and plaintiffs' interests may not be antagonistic to the class. *Gentry*, 102 F.R.D. at 494. The burden is on the defendants to demonstrate that representation would be inadequate. *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986), reh'g denied, en banc, 785 F.2d 1034 (5th Cir. 1986).

As Plaintiff Mystic Thompson states, she purchased One-A-Day Weightsmart from the Defendants. The product she purchased was a part of the uniform campaign by Defendants to market the pill as a metabolism enhancer. *See* Exhibit I, Declaration of Mystic Thompson. She paid her money to Defendants, she was harmed at the point of sale, and Defendants have held her money. Ms. Thompson further states that she has reviewed all of the pleadings, consistently met with counsel, understands and accepts her duties as class representative, agrees to fairly and adequately represent other members of the putative class and has the ability to assist in the decision making as to the conduct of the litigation. *Id.* She has been deposed as part of the litigation, and she attended and testified at the prior class certification hearing.

Here, the proposed class representative has a strong incentive to protect the interests of absent class members because, as explained above, her claims and those of the absent class members arise from the exact same conduct by Defendants and they assert the same legal claims. The proposed class representative has no material conflicts of interest with the class members and will, with the aid of her counsel, vigorously and

capably prosecute the claims of the class. Further, Plaintiff's counsel has extensive experience litigating class actions, mass torts and other complex litigation. *See* Exhibit J. As both elements of the requirement are met, Plaintiffs and their counsel can, and will, adequately represent the class.

**2.      The Requirements of 23(b)(3) are Satisfied.**

**A.      Common Questions of Law or Fact Predominate.**

To certify a class under Rule 23(b)(3), this Court has stated that the Court must find that:

(1) common questions predominate over any questions affecting only individual members; and

(2) class resolution is superior to other available methods for the fair and efficient adjudication of the controversy.

Order, February 12, 2009, page 11 (citing *Blades v. Monsanto Co.*, 400 F.3d 562, 568-69 (8th Cir. 2005)(citing Fed. R. Civ. P. 23(b)(3)); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997)). Further as this Court stated, "'To satisfy the 'predominance' standard, plaintiff must show that [their claims] can be proven on a systematic, class-wide basis.'" Order, February 12, 2009, page 11 (quoting *In re Prempro,* 230 F.R.D. at 566 (quoting *Blades*, 400 F.3d at 569)). Finally, as the Court identified, the crucial question posed is whether the proposed class is "sufficiently cohesive to warrant adjudication by representation?" Order, February 12, 2009, at pages 11-12 (quoting *Amchem*, 521 U.S. at 623-24).

Additionally, common questions of law and fact "need not be dispositive of the litigation." *Carpe,* 224 F.R.D. at 458; *In re Potash Anitrust Litig.,* 159 F.R.D. 682, 693 (D. Minn. 1995)(same). Nor is the predominance element a quantitative test. A *single*

common question may be the overriding issue in a case. *E.g., Payne,* 216 F.R.D. at 27

("A single, central issue as to the defendant's conduct vis a vis class members can satisfy

the predominance requirement even when other elements of the claim require

individualized proof.") *Brancheau,* 177 F.R.D. at 660.

While there is no bright line for determining whether common questions

predominate, "a claim will meet the predominance requirement when there exists

generalized evidence which proves or disproves an element on a simultaneous, class-wide

basis, since such proof obviates the need to examine each class member's individual

position." *Lockwood Motors,* 162 F.R.D. at 580. Common questions need only

predominate; they need not be exclusive or, necessarily dispositive. "As with the

commonality and typicality requirements, the predominance inquiry is directed towards

the issue of liability." *In re Select Comfort Sec. Litig.,* 202 F.R.D. 598, 610 (D. Minn.

2001). In this case, all of the issues of import are class-wide. Did Defendants engage in

a uniform  marketing campaign of One-A-Day Weight Smart?  Did One-A-Day Weight

Smart possess the characteristics as marketed?  Are class members entitled to have their

money returned?

Here, common issues predominate because  proof of the Defendants' conduct will

be presented through the same operative facts to establish Defendants' liability for

injuries to the citizens of Arkansas.  Defendants' liability solely rests upon their uniform

actions, and the pills are the same for each class member.  As such, if Plaintiff establishes

liability, the liability claims of all class members can be adjudicated.  If Defendants' acts

were deceitful, they were deceitful as to every class member.  The issue of whether the

plaintiff and the class she purports to represent were financially injured and/or whether

17

the Defendants were unjustly enriched as a result of the Defendants' marketing scheme is an issue that is universal to this litigation.

There are no individual issues, let alone individual issues that predominate over consumer matters. Plaintiff contends that each and every accused product was uniformly formulated and uniformly marketed. Defendants' use of uniform, marketing, advertising, and sales campaign directly contributed to the creation of a market Defendants sought, as well as the purchase of Defendants' products by the class members. Plaintiff further asserts that the product at issue remained uniform in its failure to provide for the benefits alleged to be associated with the purchase and use of product.

Furthermore, and as previously discussed, all class members share in an identical determination of damages resulting from Defendants' deceptive marketing schemes associated with selling their product to Plaintiff and the putative class. Whether those damages are in the form of restitution, actual damages for the purchase, or the return of monies by Defendants for their unjust enrichment, a calculation of damages does not rely upon individual issues. While amounts may vary, a class-wide basis exists to determine if damages should be awarded and the over-all amount to be returned. Quite simply, damages are based on the purchase of the accused product itself.

In addition to the above stated reasons for common issues, the same law will apply to all class members. There will be no dispute that Arkansas law on unjust enrichment will apply to Plaintiff's claims and all class members' claims. The evidence presented will apply equally to the claims of all class members and Plaintiff since the same law applies and the same evidentiary requirements apply. As such, all of Plaintiff's claims can be proven on a systematic, class-wide basis. Because Arkansas law applies,

and due to the pronouncement by this Court of what that law will be, Plaintiff would respectfully remind this Court of Defendants' concessions regarding the typicality and predominance criteria when applied to Arkansas' law of unjust enrichment:

> THE COURT: Well, I realize that you fervently believe that reliance is required in this case, and I understand why. But if it is not a requirement for unjust enrichment, where does leave you on these arguments about typicality and –

> MR. MARTS: I think we're in trouble if there is – I think we would be in trouble if there was not a reliance factor to these claims.

> THE COURT: You think there should be a class if reliance is –

> MR. MARTS: I don't want to concede that, but I do think that that makes our argument a lot tougher to make because it takes away what McLaughlin talked about as the second half of the equation in these kinds of cases and it make the equation just that first half, which relies on the misrepresentation. So I think that, yeah, that would make resisting class certification in this case quite a bit more difficult.

> . . . .

> THE COURT: Well, if the representations are not true and reliance is not required to prove the claim, it really wouldn't matter, would it?

> MR. MARTS: Probably not.

October 20, 2008, Hearing before Honorable James M. Moody, pages 161-162:23-13; 162-63:20-6.

As Plaintiff has asserted, liability and damages rise and fall with the Defendants' conduct. All of the common issues predominate because all class members suffered in the same way—they bought the pills. When claims share the same cause, predominance is satisfied. *See Cook*, 151 F.R.D. at 387-89. Because these common liability issues are dispositive, they automatically predominate over any potential individual questions.

**B.      This Class Action is Superior to Other Available Means of Adjudication.**

A party seeking class certification pursuant to Rule 23(b)(3) must also show "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." This requirement is readily met here. As discussed above, common questions predominate because the liability inquiry will focus solely on Defendants' conduct. The predominance of these common questions makes a class action superior for the adjudication of this controversy. *See Lockwood Motors,* 162, F.R.D. at 582.

A single class action is undoubtedly superior to hundreds of individual actions, with their increased expense, duplication of discovery, endless duplication of expert testimony and potential for inconsistent results. "The judicial system, the attorneys, the plaintiffs and the defendants will save a great deal of time and money by avoiding duplicative lawsuits." *In re Mellon Bank S'holder Litig.,* 120 F.R.D. 35, 38 (W.D. Pa. 1988); *accord Engeseth v. County of Isanti,* No. 06-2410, 2007 WL 3102074, at *8 (D. Minn. Oct. 23, 2007) (class treatment is superior, "as it will allow for the avoidance of duplicative actions, and the expeditiously resolving common issues in the best interests of the system and the parties").

No reason exists to repeatedly litigate Defendant's course of conduct *ad infinitum.* See, e.g., *Jenkins,* 782 F.2d at 473 ("Judge Parker's plan is clearly superior to the alternative of repeating, hundreds of times over the litigation of the [same issue]…, with, as the experienced judge says, 'days of the same witnesses, exhibits and issues from trial to trial.'"). Class treatment is superior because it will make resolution of this case manageable for the Court and the parties. As previously presented to the Court, the cost

20

of a bottle of these pills was approximately ten dollars. This fact alone makes individual cases impracticable to pursue. No one would pay a filing fee alone of three hundred fifty dollars ($350.00) to pursue damages of ten dollars ($10.00). A class action is the only method that allows for Plaintiff and class members to recover the benefit provided to Defendants that is now being retained by Defendants. Without this class action, most putative class members will never sue for the return of their money and Defendants will receive a huge windfall from their false performance claims.

### 3.    Proposed Class Counsel Satisfy Rule 23(g)

In addition to satisfying the Rule 23(a) and (b), elements, proposed class counsel also move for the appointment of James W. Wyly and Sean F. Rommel from Patton Roberts, PLLC; M. Darren O'Quinn from Law Offices of Darren O'Quinn, PLLC; and Eric Wewers from The Law Offices of Eric D. Wewers, PLLC as co-class counsel pursuant to Rule 23(g). Proposed class counsel anticipate no objection from Defendants as to this appointment, but reserve the right to submit additional matters if necessary.[2]

---

[2] At the October 20, 2008, hearing, proposed class counsel moved for appointment of the three named Plaintiff 's firms and Defendants stipulated to that motion as shown by the following exchange:

THE COURT:    Mr. Lowther, do you have any problems with that?

MR. LOWTHER:        He seems to know what he is talking about.

THE COURT:    That's what I thought.

MR. ROMMEL:  Thank you.

THE COURT:    Are you stipulating then that they're adequate counsel?

MR. LOWTHER:        So stipulated.

October 20, 2008, Hearing before Honorable James Moody, page 8-23.

## IV.   CONCLUSION

This is a simplistic consumer case seeking a return of funds as a result of Defendants' unfounded marketing scheme and sale of an unfounded product based upon the claims made. It is a text book example of why Rule 23 exists. There are a large number of putative class members seeking the return of small amounts of money: money that Defendants wrongfully obtained and which would be unjust for them to retain. Plaintiff requests that this Court grant her class certification request in its entirety.

WHEREFORE PREMISES CONSIDERED, Plaintiff prays this Court find that she and her counsel have satisfied Rule 23's requirement for certification of the proposed class, that she be approved as class representative, that her counsel be approved as class counsel, that the Court GRANT Plaintiff's Motion for Class Certification of a class consisting of Arkansas consumers, enter an Order that notice should be prepared, and award Plaintiff all other relief to which she may prove herself justly entitled.

Respectfully Submitted,

**Attorneys For Plaintiff**

James C. Wyly
Arkansas State Bar No. 90158
Sean F. Rommel
Arkansas State Bar No. 94158
**PATTON ROBERTS, PLLC**
Century Bank Plaza, Suite 400
P.O. Box 6128
Texarkana, Texas  75505-6128
Phone:  (903) 334-7000
Fax:  (903) 334-7007
jwyly@pattonroberts.com
srommel@pattonroberts.com

Jack T. Patterson, II
Arkansas State Bar No. 95012
Jeremy Hutchinson
Arkansas State Bar No. 06145

22

**PATTON ROBERTS, PLLC**
111 Center Street, Ste. 1315
The Stephens Building
Little Rock, AR 72201
Phone: (501) 372-3480
Fax: (501) 372-3488
jpatterson@pattonroberts.com

M. Darren O'Quinn
Arkansas State Bar No. 87125
**Law Offices of Darren O'Quinn, PLLC**
Plaza West Building
415 North McKinley, Suite 1000
Little Rock, AR 72205
Phone: (501) 975-2442
Fax: (501) 975-2443
Darren@DarrenOQuinn.com

AND

Eric D. Wewers
Arkansas Bar #94-098
**THE LAW OFFICES OF ERIC D WEWERS, PLLC**
415 N. McKinley, Suite 1000
Little Rock, AR 72205
Phone:(501) 978-8118
Fax:(501) 975-2443
eric@edwlaw.com

23

## CERTIFICATE OF SERVICE

I, Eric D. Wewers, state that on this 11th day of March, 2009, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which shall send notification of such filing to the following:

Edwin Lowther
Wright, Lindsey & Jennings LLP
200 West Capitol Ave., Ste. 2200
Little Rock, AR 72201
elowther@wlj.com

_____
Eric D. Wewers